IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN COMMUNICATIONS, INC., <br>         Plaintiff, <br><br> v. <br><br> DAMKTG, INC., <br>         Defendant. | NO.  3:17-cv-232 <br><br> JUDGE <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED ELECTRONICALLY** |

## COMPLAINT

Plaintiff North American Communications, Inc. ("NAC" or "Plaintiff"), by and through its undersigned attorneys, Rhoads & Sinon LLP, files the within Complaint and avers as follows:

## THE PARTIES

1. NAC is a business corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business at 141 NAC Drive, Duncansville, Pennsylvania 16635.

2. Upon information and belief, Defendant DAMKTG, Inc., is a business corporation organized under the laws of the State of New Jersey whose registered agent is Mary Ortiz, 31 Readington Road, Branchburg, New Jersey 08876.  Upon information and belief, Defendant has its principal place of business in New Jersey.

1062252.1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims stated in this Complaint occurred in this district.

**FACTUAL BACKGROUND**

5. NAC is a vertically integrated direct mail and fulfillment company that provides a diverse portfolio of direct mail services.

6. Defendant also provides direct mail and fulfillment services.

7. In or around 2010, Defendant and Verizon Corporate Services Group Inc. entered into a Services Agreement for Direct Mail Services for the provision of direct mail services related to advertising and marketing of Verizon products and services.

8. Pursuant to the Services Agreement, Defendant was to fulfill orders for direct mail services placed by either Verizon or a third-party advertising agency performing work on behalf of Verizon (collectively, "Verizon").

9. In fulfilling orders for direct mail services placed by Verizon, Defendant would receive data from Verizon for advertising/marketing material and then process the data by printing, assembling, sorting, and mailing the material.

10. Upon information and belief, through the first half of 2016, Defendant fulfilled orders from Verizon "in house" by utilizing its own manufacturing and printing facilities.

11. However, in 2016, Defendant experienced financial difficulty that jeopardized its ability to continue fulfilling orders from, and thus satisfying its contractual obligations to, Verizon.

12. In order to retain the Verizon business, as well as alleviate its financial strain by reducing operating costs, Defendant approached NAC about subcontracting the Verizon work to NAC and utilizing NAC's manufacturing capabilities at NAC's Duncansville facility to fulfill orders from Verizon.

13. In or around July or August of 2016, representatives of NAC and Defendant discussed the details of the proposed arrangement, including the functions Defendant needed NAC to perform, the schedule to fulfill particular orders, and pricing.

14. These discussions culminated in an oral contract ("Contract") between NAC and Defendant pursuant to which NAC would provide direct mail services to Defendant to fulfill the Verizon orders, and, in exchange therefor, Defendant would pay NAC for such services in an amount equal to eighty percent (80%) of the amount DA invoiced Verizon.

15. NAC commenced providing direct mail services under the Contract in or around August, 2016.

16. As contemplated by the Contract, Defendant would receive an order from Verizon and then issue a corresponding work order to NAC that set forth the schedule, quantity, specifications, and other details of the Verizon order.

17. Upon receipt of the work order, NAC would print the material; assemble and sort the material for mailing; and then either mail the material from Duncansville or deliver the material to a third-party shipping company for ultimate mailing.

18. Thereafter, NAC would issue an invoice for each work order to Defendant, with payment due 30 days from the date of the invoice.

19. Although Defendant would issue an invoice to Verizon that would include the services rendered by NAC to fulfill the Verizon order, Defendant's obligation under the Contract to pay NAC was not contingent on Defendant receiving payment from Verizon.

20. During the course of the parties' contractual relationship, Defendant sent more and more Verizon work to NAC, and there was the possibility that NAC would manage fulfillment of all direct mail services for Verizon.

21. However, on November 28, 2016, Verizon notified Defendant that Verizon was terminating the Services Agreement with Defendant.

22. NAC continued to provide services under the Contract through December, 2016, and also assisted with the transition to Verizon's new vendor of direct mail services.

23. NAC performed its obligations under the Contract with Defendant and rendered the requested direct mail services, which were accepted by Defendant and which enabled Defendant to satisfy its own contractual obligations to Verizon by fulfilling the Verizon orders.

24. Moreover, upon information and belief, but for NAC rendering direct mail services to Defendant, Verizon would have terminated its agreement with Defendant well before November 28, 2016.

25. Yet, despite the foregoing, Defendant failed to pay NAC all amounts due and owing for such services.

26. On October 14, 2016, NAC advised Defendant that Defendant owed $46,665.75 on outstanding invoices, including $2,456.96 that was over 60 days due, and asked when NAC can expect payment.

27. Defendant made no payments on this outstanding balance, however, explaining that Verizon pays Defendant between 60 and 90 days and that Defendant was waiting to be paid.

28. Although Defendant's contractual obligation to pay NAC was not contingent on Defendant receiving payment from Verizon, NAC nevertheless continued to provide services under the Contract based on Defendant's assurances that NAC would be paid all amounts due.

29. By email dated November 15, 2016, NAC advised Defendant of five invoices totaling $5,677.92 that were 90-days due and requested payment information for them.

30. Defendant paid these invoices, but made no further payment on the remaining unpaid balance.

31. On December 9, 2016, NAC advised Defendant of the outstanding amount due as of November 30, 2016, and asked for the payment status of the 90-day past due balance that was now $8,207.04.

32. Defendant made no immediate payment, however, even though Defendant represented to NAC that Defendant would wire funds to pay the 90-day past due balance.

33. On December 19, 2016, Defendant advised NAC that Defendant had received a check for $166,650.52, but that the check was issued to the wrong payee (confirmed by a picture of the check) and that Defendant had already talked to Verizon to get the correct check.

34. By December 28, 2016, NAC had issued eighty-five (85) invoices, dated between August 31, 2016, and December 20, 2016, for which the total amount due and owing from Defendant was $310,238.76. [A summary of all outstanding invoices issued to Defendant by NAC is attached hereto as Exhibit "A".]

35. On December 29, 2016, Defendant paid $50,000.00 to NAC, reducing the total amount due and owing to $260,238.76.

36. Defendant paid NAC only $50,000.00 even though, upon information and belief, Defendant had received a check from Verizon for at least $166,650.52.

37. Defendant has made no further payments to NAC, despite NAC's repeated demands for payment.

38. Defendant's failure to pay NAC is without excuse or justification.

## COUNT I

### Breach of Contract

39. The preceding paragraphs are incorporated herein by reference.

40. NAC and Defendant are parties to the Contract.

41. Pursuant to the Contract, NAC agreed to provide direct mail services related to Verizon orders, and Defendant agreed to pay NAC for such services.

42. NAC performed its obligations under the Contract by providing the direct mail services for each Verizon order, all of which were accepted by Defendant.

43. However, Defendant failed to pay NAC for all services that were provided by NAC and that were accepted by Defendant.

44. Accordingly, Defendant has breached the Contract by failing to pay for all such services.

45. As a direct and proximate result of Defendant's breach of the Contract, NAC has sustained damages in an amount not less than $260,238.76.

46. NAC has perform its obligations and satisfied all conditions for payment under the Contract.

## COUNT II

### Unjust Enrichment (in the alternative)

47. Paragraphs 1 through 38 are incorporated by reference.

48. NAC conferred a benefit on Defendant by rendering direct mail services to Defendant that enabled Defendant to satisfy its contractual obligations to Verizon.

49. NAC rendered direct mail services to Defendant at Defendant's request and with the reasonable expectation that NAC would be paid for such services.

50. Defendant accepted and appreciated the benefit conferred by NAC.

51. Defendant has accepted and retained the benefit conferred by NAC under such circumstances, as described in this Complaint, that it would be inequitable and unjust for Defendant to retain the benefit conferred by NAC without compensating NAC for the value of the benefit conferred on Defendant.

52. Accordingly, NAC is entitled to compensation in *quantum meruit* for the reasonable value of the services rendered to Defendant in an amount not less than $260,238.76.

### Prayer for Relief

**WHEREFORE**, Plaintiff North American Communications, Inc., respectfully requests:

(1) Judgment in favor of Plaintiff and against Defendant DAMKTG, Inc., for all direct, consequential, compensatory, incidental, and special damages arising out of Defendant's breach of the parties' Contract or, in the alternative, Defendant's unjust enrichment;

(2) Interest and costs; and

(3) Such other legal or equitable relief as the Court deems proper and just.

### Jury Trial Demand

Plaintiff North American Communications, Inc., respectfully demands a trial by jury on all issues so triable.

                                        Respectfully submitted,

                                        RHOADS & SINON LLP

Dated:  December 12, 2017          By: /s/ *Robert J. Tribeck*
                                        Robert J. Tribeck, Esquire
                                        Pa. I.D. No. 74486
                                        One South Market Square, 12th Floor
                                        Harrisburg, PA  17101
                                        Phone:  717.233.5731
                                        rtribeck@rhoads-sinon.com
                                        *Attorneys for Plaintiff*